UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA J. BROKAW,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO.  CV-11-3062-JLQ<br><br>MEMORANDUM OPINION AND<br>ORDER RE:  MOTIONS FOR<br>SUMMARY JUDGMENT |

   BEFORE THE COURT are Cross-Motions for Summary Judgment. (ECF Nos. 18, 23).  Plaintiff is represented by attorney James Tree.  Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Jessica Milano.  Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI"), after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is affirmed.

## I. FACTS AND PROCEDURAL HISTORY

   The facts are contained in the medical records, administrative transcript (ECF No. 10)("Tr."), and the ALJ's decision, and are only briefly summarized here.

   Plaintiff was born in 1970 and was 37 years old on the alleged disability onset date of March 17, 2007. (Tr. 69). She has a high school education and one year of college. (Tr. 157). Her past work experience includes employment as an office assistant, radio operator (for the U.S. Army), and transportation coordinator. (Tr. 153-54, 160-170).  Plaintiff was last gainfully employed in 2004. (Tr. 150).

ORDER - 1

On March 14, 2007, Plaintiff filed an application for SSI, alleging an onset date of January 1, 2004. (Tr. 140-42). The alleged date of onset was amended at the time of the administrative hearing to March 14, 2007. Plaintiff asserts that she is disabled due to a combination of impairments including irritable bowel syndrome, fibromyalgia, anxiety, depression, diabetes, and degenerative disc disease. (Tr. 152).

The Commissioner denied Plaintiff's claim initially and on reconsideration. Plaintiff requested a hearing which took place on April 21, 2010. (Tr. 36-68). On June 4, 2010, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 16-28). Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (Tr. 13-15), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On June 1, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision. (ECF No. 4).

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, benefits are denied. If she is not, the decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520©, 416.920©. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the Step 3.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous

ORDER - 3

occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## IV. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).      This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## V. COMMISSIONER'S FINDINGS

The ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful

ORDER - 4

activity since the alleged onset of disability in March 2007. (Tr. 18).  At Step 2, the ALJ found the medical evidence established that since the alleged date of onset, Plaintiff had the following severe impairments: irritable bowel syndrome, fibromyalgia, mild lumber degenerative disc disease, diabetes mellitus, right carpal tunnel syndrome, depressive disorder with features of anxiety vs. bipolar disorder, and borderline personality disorder. (Tr. 18).  However, at Step 3, the ALJ determined that the Plaintiff's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1.

At Step 4, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work except for restrictions from: performing tasks that require more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching or crawling; and tasks that require climbing of ladders, ropes, and scaffolds. She also found Plaintiff should be provided ready access to a restroom and should be limited to no more than low semi-skilled work with an SVP (Specific Vocational Preparation) of no more than three (3).  (Tr. 21).  The DOT lists SVP ratings for each described occupation. SVP is defined "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, app. C, 1991 WL 688702. A job with a three SVP rating means that a typical worker will require " "[o]ver 1 month up to and including 3 months" to learn the skills necessary to perform the job. DOT, app. C, 1991 WL 688702.

In her Step 4 finding, the ALJ found Plaintiff's statement that she is incapable of all work activity not credible.  The ALJ found her subjective complaints and alleged limitations only "partially credible."  In making this finding, the ALJ found the claimed severity of her condition inconsistent with her own testimony and the medical evidence. To support this adverse credibility

ORDER - 5

finding, the ALJ also noted Plaintiff's relatively infrequent trips to the doctor, marked improvement of her conditions with conservative modalities, and significant gaps in earnings history raising a question of whether the claimant stopped working for reasons other than an alleged disabling impairment, such as a lack of motivation to work. (Tr. 22-23).

At Step 4, based on the testimony of a vocational expert, the ALJ found that Plaintiff was unable to perform the demands of her past relevant work as a general office assistant, dispatcher, and maintenance scheduler. (Tr. 26-27). However, at Step 5, the ALJ determined, that based upon the vocational expert testimony and considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the Plaintiff can perform, such as small products assembler, cannery worker, and cleaner/housekeeping. (Tr. 27). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act from March 14, 2007, through the date of her decision, June 4, 2010.

## VI. ISSUES

Plaintiff alleges the ALJ erred in 1) rejecting the opinions of Plaintiff's medical providers; 2) failing to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints; and 3) failing to meet the Step 5 burden by relying upon an incomplete hypothetical.

## VII. DISCUSSION

**A. Medical Opinions**

Plaintiff contends the ALJ improperly rejected the opinions of Plaintiff's medical providers. (ECF No. 19 at 11-16). Plaintiff contends the ALJ failed to adequately consider the opinions of her primary providers, PA Tuning, Dr. Thompson, Dr. Sager, and therapists Mr. Garner and Mr. Pomerinke.

"The ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.2008); 20 C.F.R. § 404.1527(b); SSR 96–5p,

ORDER - 6

1996 WL 374183, at *2 (July 2, 1996). In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. An ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Where conflict exists between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632. "The ALJ can

'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.' " *Thomas*, 278 F.3d at 957 (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

One specific, legitimate reason for rejecting a treating physician's opinion is where that opinion is premised on the claimant's subjective complaints, which the ALJ has properly discounted. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Where the treating physician's opinion is controverted by a non-treating physician's opinion based on independent clinical findings, the non-treating physician's opinion may be substantial evidence. *See Thomas*, 278 F.3d at 957 (*citing Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999)). " 'When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict.' " *Id.* (quoting *Matney*, 981 F.2d at 1019).

Opinions of non-treating examining or consulting physicians alone may constitute substantial evidence supporting an ALJ's decision when they are consistent with other evidence in the record. *See Magallanes*, 881 F.2d at 752 ("[T]he reports of consultative physicians ... may serve as substantial evidence."); *Thomas*, 278 F.3d at 957 ("The opinions of nontreating or non-examining physicians may ... serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see also 20 C.F.R. § 404.1527(e) (stating that the opinions of non-examining physicians constitute medical evidence).

Physicians' assistants and therapists are medical professionals, but they are not "acceptable medical sources" (20 C.F.R. § 404.1513(a)) under the social security framework. They are considered "other sources," 20 C.F.R. § 404.1513(d)(1). The distinction between "other sources" and an "acceptable medical source" is important because only an "acceptable medical source" may be considered a "treating source." See 20 C.F.R. §§ 404.1502, 416.902. Plaintiff's

ORDER - 8

positions fail to recognize this important distinction. (ECF No. 19 at 12). The regulations provide that, "[i]n addition to evidence from the acceptable medical sources" evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). An ALJ may discount testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." *Molina v. Astrue* 674 F.3d 1104, 1111 (9th Cir. 2012).

**1. Physical Impairment**

Plaintiff contends the ALJ "summarily dismiss[ed] the opinion" of Plaintiff's physician's assistant, David Tuning, PA-C, whom she saw for her general health care needs for over a decade. Tuning did not qualify as a medically acceptable treating source because he was a physician's assistant, see 20 C.F.R. § 404.1513(d)(1). Plaintiff contends, however, that because he was Plaintiff's primary care provider, his opinion -- specifically that she was restricted to sedentary work-- should have been accorded significant weight because he was in a better position than any other source in the record to provide an accurate assessment of Plaintiff's functional limitations. (ECF No. 25 at 3).

In 2007, 2009 and 2010. PA Tuning completed a Washington State Department of Social and Health Services physical evaluation form. (Tr. 238-243; 498-507). Mr. Tuning diagnosed Plaintiff with irritable bowel syndrome, carpal tunnel, balance problems, fibromyalgia and back pain. In each evaluation, Mr. Tuning opined that Plaintiff would be limited to sedentary work. Sedentary work "means the ability to lift 10 pounds maximum and frequently lift and/or carry such articles as files and small tools. A sedentary job may require sitting, walking and standing for brief periods." (Tr. 240). Mr. Tuning indicated Plaintiff would be able to participate in pre-employment activities such as job search or employment classes. (Tr. 241).

Notably, the ALJ did not "summarily dismiss" Mr. Tuning's opinions simply

ORDER - 9

because he qualifies as an "other source."  The ALJ accorded Mr. Tuning's opinion that Plaintiff was limited to sedentary work less weight because his "physical examinations revealed no abnormalities or physical limitations." (Tr. 25).  This is a germane reason for discounting this opinion, supported by the record.  By "abnormalties," the ALJ was not ignoring the diagnosed conditions, but obviously was referring to sensation or anatomic abnormalties. Both Mr. Tuning's treatment notes and ordered radiological studies support this conclusion.  For example, Mr. Tuning noted "I can't find point tenderness to that would correspond to Fibromyalgia" (Tr. 463); radiological testing of the hip showed mild degenerative changes but "normal" bony alignment; "unremarkable" soft tissues. (Tr. 473); and imaging of the spine showed a "normal appearing thoracic spine" (Tr. 317). Treatment notes documented the Plaintiff working with her hands a lot, doing housecleaning, and working with animals.  (Tr. 455). Mr. Tuning linked the status of Plaintiff's physical condition, not with physical abnormalties, but with her mental status.  (Tr. 241).  The ALJ did not err in her assessment of Mr. Tuning's opinion.

**2. Mental Impairment**

Plaintiff also contends the ALJ failed to give adequate reasons for rejecting the limitations assessed by Plaintiff's therapists at Central Washington Comprehensive Mental Health, Rob Garner and Arland Pomerinke.  On February 16, 2007, Mr. Garner assessed the Plaintiff's cognitive abilities to be moderately deteriorated and her social/personal skills to be markedly deteriorated.  As Defendant notes, Mr. Garner completed this assessment in February, 2007, *before* he began treating Plaintiff in March, 2007.  Accordingly, it appears that Mr. Garner assessment was merely recording Plaintiff's self-report in finding these marked limitations. Because the ALJ properly discounted Plaintiff's credibility as to the extent of her limitations, as explained below, the ALJ properly accorded Mr. Garner's opinions less weight because they rely on Plaintiff's self-report and are not

ORDER - 10

otherwise supported by his independent observations. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ provided a germane reason for according less weight to Mr. Garner's early assessment of Plaintiff's limitations.

Plaintiff likewise contends the ALJ "summarily rejected" the opinions of Mr. Pomerinke, specifically his opinion on the check-box form that Plaintiff had "marked" social limitations including the ability to respond appropriately and tolerate the pressure and expectations of a normal work setting. However, the ALJ did not summarily dismiss Mr. Pomerinke's assessment. Instead, the ALJ stated that she accorded his opinion little weight because his assessment was 1) based upon Plaintiff's self-report; and 2) inconsistent with his treatment notes, which indicated Plaintiff "thrive[d] in treatment and had functional improvement with mental health treatment. (Tr. 26, 485). Mr. Pomerinke's notes indicate that Plaintiff never missed a session and was "making progress with confronting her irrational fear of social contact." The ALJ did not commit reversible legal error in according less weight to Mr. Pomerinke's assessment of Plaintiff's level of function.

The ALJ did not ignore or wholly reject the assessments of these "other sources" as Plaintiff contends. The ALJ's opinion evidences she carefully considered each of them and provided germane reasons, supported by the record, for according them less weight. It was not error for the ALJ to conclude that the evidence showed that Plaintiff's overall level of function was better than that documented by these providers, on check box forms, at a particular time. Certain of these times clearly involved complex situational stressors, such as the relinquishment of her parental rights to her son. But as noted by the ALJ, the overall record demonstrates the Plaintiff regularly attended mental health therapy which improved her overall functioning. Plaintiff's RFC limitations, including that she have no more than occasional contact with the general public, noted by the ALJ are accurately reflected by the weight of the evidence and the assessments

ORDER - 11

made by Dr. Gentile, Dr. Ho, and Dr. Rullman.

**B. Credibility**

Plaintiff also contends the ALJ improperly rejected Plaintiff's own subjective complaints without giving "clear and convincing reasons" and without identifying what testimony was not credible and what evidence undermined which allegations. (ECF No. 19 at 16).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce "some" of the alleged symptoms. (Tr. 22).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]' " *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345–47 (9th Cir. 1991). The ALJ made no finding of malingering. She found that the statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only *partially* credible, and not credible to the extent they were

inconsistent with her RFC assessment. (Tr. 22).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling ("SSR") 88–13) FN2 (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

The ALJ did not wholly discredit Plaintiff. Indeed, in finding that Plaintiff's impairments had no more than a moderate impact in her overall functioning, she found Plaintiff *partially* credible. However, the ALJ discounted Plaintiff's specific testimony that she is incapable of all work for four reasons: 1) record evidence of activities of daily living that were not consistent with total disability; 2) relatively infrequent trips to the doctor for disabling *physical* impairments and lack of follow through with treatment recommendations; 3) routine and conservative treatment for her mental health impairments and evidence of improvement with such conservative treatment; and 4) poor work history, including significant gaps in earnings prior to the alleged date of disability onset.

After reviewing the record, the court finds the ALJ did not arbitrarily discredit Plaintiff's testimony. In this case, the ALJ summarized Plaintiff's testimony and found that Plaintiff's daily living activities contradicted her testimony that she was incapable of all work activity. The ALJ's reference to Plaintiff's daily activity level as one of multiple credibility factors was not error. It

ORDER - 13

is true, as noted by Plaintiff regarding activities of daily living, that the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities .... does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn*, supra, 495 F.3d at 639 ( citing Fair, supra, 885 F.2d at 603). The record supports that Plaintiff was able to live independently, do housekeeping, drive, run weekly errands, get groceries, and attend doctor's appointments. The medical records also show the Plaintiff reported house sitting (Tr. 401), doing projects at home keeping her busy, and "working with her hands a lot doing cleaning and housekeeping and working with animals." (Tr. 455). There is also reference to her ability to do house work and "lift a hose around the yard..." (Tr. 460). Accordingly, the ALJ properly considered Plaintiff's overall level of daily functioning in assessing the credibility of Plaintiff's testimony that she unable to perform any work.

Furthermore, in assessing Plaintiff's credibility, the ALJ accurately described the medical record in stating that the record showed relatively infrequent trips for *"disabling physical symptoms"*; that it showed a failure to follow through with treatment recommendations; and that her treatment involved conservative measures with little to no use of medication. These findings are supported by the record. PA Tuning's treatment records, for example, evidence that when Plaintiff attended appointments she typically presented a list ("quite a list again today, Tr.381) of varied physical complaints like dry and irritated skin, poor sleep, allergies, pain ("from the top her head to the bottom of her feet, Tr. 463), ingrown toenails, and diarrhea. As to Plaintiff's mental health impairments, although

ORDER - 14

Plaintiff has in fact routinely sought mental health treatment, the ALJ correctly noted that the record evidences an overall *improvement* in functioning with fairly conservative modalities, including therapy and limited use of medication. The ALJ properly considered the inconsistencies between the record evidence, and the degree of limitation testified to by Plaintiff.

Finally, the ALJ's consideration of the fact of Plaintiff's poor work history was also not in error. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.2002) (holding that claimant's "extremely poor work history" shows that she has little propensity to work and negatively affects "her credibility regarding her inability to work").

In assessing the Plaintiff with a moderate level of social dysfunction, the ALJ did not fail to account Plaintiff's testimony that she prefers to stay home and that she avoids going out in public. (Tr. 22). Although the ALJ's credibility assessment could have been even *more* specific given the record evidence, it is not the role of the reviewing court to second-guess the ALJ's assessment of credibility decision, where, as here, the ALJ offered substantial evidence to support for reaching that decision. The court finds the ALJ's credibility finding was *sufficiently specific* to permit the court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony. Thus, there was no error.

**C. Step 5**

At Step 5, Plaintiff contends the ALJ erred by relying upon the Vocational Expert's testimony because the ALJ allegedly posed an incomplete hypothetical based on an inaccurate RFC assessment. (ECF No. 19 at 19). Specifically, the Plaintiff contends that the hypothetical was deficient because it failed to include the marked limitations noted by Mr. Garner and Mr. Pomerinke, and the sedentary limitation assessed by Mr. Tuning. (ECF No. 19 at 20).

The hypothetical that ultimately served as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (citation and quotation marks omitted). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence ." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir.2006). Furthermore, as the Ninth Circuit has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence). A claimant fails to establish that a Step 5 determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

   In this case, because the court finds that the ALJ's RFC assessment was supported by substantial evidence and free of legal error, the only issue is whether the hypothetical ultimately relied upon by the ALJ adequately captured that RFC assessment. The hearing transcript shows that the ALJ asked the vocational expert to consider an individual with an RFC to perform light work, with restrictions for climbing ramps and stairs, balancing, stooping, kneeling, crouching, and being precluded from crawling, climbing ladders, ropes or scaffolds. (Tr. 62). The vocational expert was also advised to consider the individual limited to no more than SVP: 3 level tasks, due to the effects of pain and psychological symptoms.

(Tr. 62). The final restrictions the ALJ informed the expert to consider were ready access to a restroom and no more than occasional contact with the general public. (Tr. 62). The ALJ relied upon the vocational expert's testimony in response to this hypothetical to find that there were other jobs that existed in significant numbers in the economy that plaintiff could perform. (Tr. 27, 63-65.) Accordingly, the ALJ appropriately utilized the vocational expert testimony.

## VIII. CONCLUSION

For the aforesaid reasons, the Commissioner's decision is affirmed.

**IT IS HEREBY ORDERED:**

    1. Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

    2. Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED.**

    3. The Clerk is directed to enter Judgment dismissing the Complaint and the claims therein with prejudice.

    **IT IS SO ORDERED**. The District Court Executive is directed to file this Order, enter Judgment as directed above, and close this file.

DATED this 12th day of February, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE
